We have on this afternoon's docket card number 21-20127, judges Weiner and Holt are participating via Zoom. I'm sure there's been some testing to ensure that they're able to hear them and that they can hear all of us. So I'll ask now whether or not the appellant is ready to proceed. Good afternoon, and may it please the court. And if the tax imposed under 4611 operates as a user fee, then it does not violate the export clause. It is permissible. And a charge is properly viewed as a user fee where it is designed as compensation for a government-supplied service, facility, or benefit. And to make that determination, the court will look at the purpose of the charge, how it operates, and whether the charge reliably correlates with government service. Just to clarify the bounds of our discussion, your argument is that it's a user fee, not an export tax. You're not arguing that it's not subject to the export clause at all. Well, our argument is that it's a user fee, and a user fee is permissible under the export clause. Right. Right, right. You're not saying we don't have the analysis at all. You're just saying we fall within the user fee exemption. Exactly, that we fall in the user fee category. And 4611 charge is properly viewed as a user fee because it compensates the government for the services related to the risk related to oil, and it reliably correlates with those services. Taxes imposed on those who benefit from an activity that requires government services operate as a user fee, as the secondary sources in our brief reflect, and as PACE itself illustrates. The 4611 charge is designed to fund the government services that are necessitated by the risk created by the oil industry, and has the attributes of a fee with regard to whom it applies to and what the funds can be used for. And the charge applies to the primary beneficiaries in the crude oil industry, refiners, importers, and exporters, as Congress sought to impose the cost of oil spills broadly throughout the industry on the class whose persons created the risk of spills. And with regard to what the funds can be used for, the funds can be used for no other purpose than addressing these risks. The funds that are raised under 4611 are all appropriated to the Oil Spill Liability Trust Fund, and the money in the fund can be used only for the designated oil spill related activities that are set out in Section 9509C. And the charge is that— Your idea is briefly, you pay the tax, and in exchange, the funds go to cleanup spills, and then you have this cap on liability. Is that right? The cap on liability applies for the responsible party, which is the statutorily defined term. It's generally the owner or operator of vessels and onshore facilities and offshore facilities. The charge applies to importers, exporters, and refiners who may or may not be a responsible party, but the amounts in the fund are designed to cover the excess costs that a responsible party doesn't pay for. And so it covers— I guess what I'm asking is, are you relying on the cap on liability as part of the user fee, or is it about something else? Well, whether—even without the cap, we don't need the cap. The cap is a benefit. It benefits directly any exporter that is a responsible party. And more broadly, even if an exporter is not a responsible party, they benefit by the cap because it lowers the cost of oil transportation. The reason I asked about the cap is, as I understand it, the cap applies to sea-based oil production. Does it apply also to land-based oil production? It does. It also applies to onshore facilities, which is land-based oil production, storage, and transportation. And this is actually set out in the Congressional Research Service Report from 2017 that summarizes how the Oil Spill Liability Trust Fund operates. And I believe it's page 15 through 16 of that report that sets out the various caps for the various types of responsible parties. So it would apply there. But exporters receive a government service beyond the cap. They receive the government service that the government has managed all the risks related to oil spills—oil spill preparation, oil spill response, and oil spill prevention. And exporters benefit from transporting oil, which creates the risk to U.S. waters that the government manages. And the government manages the oil risk instead of requiring exporters and other participants in the oil industry to manage that risk. And again, it also lowers the cost of oil transportation, which benefits exporters. Now, the Supreme Court has twice addressed whether a charge is permissible user fee. In Pace, which found a charge to be a permissible user fee, and in U.S. SHU, where it determined that a charge was not a user fee for purposes of the export clause. Neither case addressed a scheme like this that involves risk pooling by an industry for future harms. But the charge here functions in the same manner as the charge in Pace functioned, that it's funding a government service that's necessitated by the action of the payer. There it was fraud prevention. Here it's oil spill-related services. And as in Pace, the charge compensates the government for those services and only those services. The funds cannot be used for anything else other than the oil spill-related services. And therefore, like the charge in Pace, it's not an excessive charge. And unlike the charge in U.S. SHU, the charge is not determined by a factor that is wholly unrelated to the government services. I thought the fund here could be used for other things. Research and development for oil pollution technology, marine, various kinds of marine research, grants to universities and other research entities. It can be used for other things other than cleanup, but they're all related to oil spills. And so the research and development used as an example that the Coast Guard does, it's all designed to minimize the occurrence and the cost of oil spills, which benefits the industry. But that does change it. That does change the analysis, doesn't it? I mean if I heard the story of sort of, you know, everybody pays in, but it's sort of a government insurance fund, and you're protected by every dollar that you're putting in, that's one thing. But if you're also using it for other activities, perhaps tangentially related and adjacent to this world, but it's not actually meant to reimburse through an insurance type of scheme, that sounds to me a bit different. Well, I think the difference here is that all of the services the government's provided relate to managing the risks that are caused by the oil industry, the exporters, the importers, and the refiners. But for their activity with transporting and drilling for and storing oil, there would be no need for the government to provide these services to protect the navigable waters. I guess the way I think about it is, let's say it's auto insurance. I pay a premium in order to insure me against risk of accidents that are my fault or somebody else's fault. And that I get. What I don't necessarily expect is to be paying for research into highway safety or better cars or that sort of thing. So in that sense, this sounds to me a bit beyond just a simple fee. Well, I think that it's just all related to the risk because the government would not need to be providing the service but for the fact that the industry is engaging this activity. And it benefits the industry for the government to figure out ways to minimize the cost of oil spills because it makes the fund – it allows the fund to lower the cost of oil transportation and lower the cost of oil spills, which benefits the industry. Even if we were to stipulate, though, that the funds will be used ultimately to benefit these taxpayers, assuming it's a tax, why is that a defense? I would hope that all government spending is intended at some level to benefit the taxpayer. I'm not sure that makes it a usual. That's right. And in that sense, in that broad sense, the fee in PACE also benefited all taxpayers because the government was using the stamp fee to investigate tax fraud. And that benefits all taxpayers. The less that one person pays, the more everybody else has to pay. But here you're looking at why the government is having to do this. And it's having to do it for the users of government U.S. infrastructure, navigable waters. And therefore, it is cabining the cost to that industry properly because it's doing – it's having to engage in these risk management services because of that industry. Now, it may end up protecting the government or even third parties in the same way that the charge and the services in PACE benefited the government, protected the government from tax fraud, protected other taxpayers from a tobacco manufacturer trying to pay less than its fair share. But it's still properly viewed as a user fee. And I do think it bears emphasizing, because the Supreme Court has emphasized it, that to save a statute from unconstitutionality, courts should resort to every reasonable construction. So the issue here is not whether the charge is best viewed as a user fee but whether it is reasonable to view it as a user fee. And we believe that it is because it's designed to compensate the government for its oil spill-related services, and it reliably correlates to those services. And with regard to that last point, there is no per se rule bar on quantity or a value-based charge. That's not what the test is. In U.S. SHU, the court considered a value-based charge and didn't reject the argument that the tax was a user fee solely because it was a value-based charge. It's because the court went on to analyze, in that case, on those facts, a value-based charge did not correlate reliably to the government's service because the value of the cargo, whether it was gold or a bunch of marshmallows, had nothing to do with the amount of port use that the exporter was going to use. In PACE, the Supreme Court emphasized that Congress has the discretion to estimate the cost of government service. And in that case, the estimate was based on an arbitrary rule that the court assumed was more convenient and less onerous than any other method that could be adopted and blessed that estimation because the funds were used for no other purpose other than the fraud prevention that the government was going to engage in. And the same is true here. Again, the funds can be used for no other purpose than the oil spill risk work that the government does. And U.S. SHU does not eliminate that discretion that was recognized and emphasized in PACE. The quantity of oil reliably correlates to the risk that the government, the Coast Guard, is managing. It's not the only factor, but it is an important factor. That's why oil spills are discussed in terms of quantity. Barrels are barrel split. We see that in the newspaper. We see that in the court cases. And Congress determined that the per barrel charge was a reasonable proxy for each oil industry member's portion of the risk that Congress sought to spread out industry-wide. And as we pointed out in our brief, the per barrel charge was adopted only after Congress had engaged in extensive investigation of alternatives and evaluation of criteria for what it determined to be a fair fee system. So Congress was balancing precision and manageability in creating the fee. There's other contextual evidence that Congress intended the 4611 charge to be a user fee. Congress knows how to exempt exports and did not do so here. This charge has been repeatedly reenacted after U.S. SHU. U.S. SHU was a 1998 decision, and we've listed the reenactments in the background section of our opening brief, but I believe that there were five since U.S. SHU was decided. And Congress determined that this satisfied the test that was set out in U.S. SHU. We're going to assume that Congress acted intentionally and that 4611 did not require an exemption. And most recently, Congress reenacted the charge in December 2020, which was shortly after the district court decision in this case. So unless the court has any further questions, I'll reserve the rest of my time for rebuttal. Thank you, counsel. Mr. Knight. May it please the court. Steve Knight on behalf of Traffic Area Trading LLC. The export clause of the United States Constitution provides no tax or duty shall be laid on exports from any state. 26 U.S.C. section 4611B, however, states, if any domestic crude oil is exported from the United States, then a tax is hereby imposed on such crude oil. The question in this appeal is whether 4611B imposes a tax on crude oil exports in violation of the export clause and not, as the government argues, a user fee paid in exchange for a service rendered to the exporter. Because section 4611B imposes a tax on crude oil exports in violation of the export clause, this court should affirm the district court's judgment in favor of Traffic Europe. Now, the government's user fee theory has changed in this case, as this case has progressed. In the district court, it argued that in exchange for section 4611B taxes, what it provides to the exporter is capped liability under the Oil Pollution Act of 1990 in the event there was an oil spill, something that it likened to a form of excess insurance. But this argument fails for all of the reasons that we addressed on page 26 through 34 of our brief and also for the reasons that the district court judge wrote in his opinion, which included some of what you mentioned, Judge Ho, that this money that's paid into the fund is used for a broad array of services, and that fails under the basic PACE and USU analysis. Do you know, to follow up on that, what percentage of funds are diverted to these other activities? What percentage of the funds are going to the other services? Right. Is it a tiny percentage? Is it 50%? What is it? The fund, as I understand it, is currently at a level of some odd $7 billion. And what Judge Hayden wrote in the opinion is that several – he put that it was a significant amount, millions of dollars each year are used for these other purposes that have nothing to do with any conceivable benefit to a responsible party. Now, this notion of capped liability somehow being a benefit or service provided to the exporter in exchange, which was the government's user theory in the district court, that theory also fails outright because foremost exporters do not have capped liability under the Oil Pollution Act of 1990. Only responsible parties do. Responsible parties are defined as owners, operators, or demise charters of vessels who could potentially cause a spill, but they're not liable for the tax. Only the exporter is. So there's a complete disconnect, and that's what Judge Hayden described at length in his opinion. And I think that recognizing this disconnect, the government has come up with a different user fee for purposes of this appeal. What the government is now arguing is something it didn't argue in the district court. The government is arguing that 4611B requires exporters to pay a fee in exchange for the government providing broad cleanup services that it says benefits the entire oil industry of which the exporter is a part and that that should be sufficient to transform it into a user fee or to characterize it as a user fee. And the problem is is that this argument completely misapplies the user fee analysis from U.S. SHU. In the U.S. SHU case, an exporter challenged the harbor maintenance tax which imposed a tax on exports based on the value of the export such that the greater the value aboard the vessel, the higher the tax. Now, the government argued that because this money that it collects is placed into a large fund and out of that fund it can perform various harbor maintenance services that could potentially benefit the taxpaying exporter, the harbor maintenance tax was a user fee. In analyzing the government's argument, the Supreme Court reverted back to its earlier decision in Pace v. Burgess where it upheld a law requiring exporters to pay 25 cents for a stamp to be placed on tobacco exports for the specific purpose of enabling the exporter to identify which packages are exempt from the tobacco tax which was levied on domestic sales based on a quantity or value calculus. In describing why the 25 cent fee in Pace was not a user fee, I'm sorry, was a user fee, the U.S. SHU court explained that user fees have two characteristics. First, that 25 cent stamp bore no proportion whatever to the quantity or value of the package which the stamp was affixed. Second, it was compensation given for a service in fact rendered and it was not excessive taking into account the cost of arrangements needed to both give the exporter the benefit of the exemption from taxation and to secure against fraud. The district court in the Pace opinion, the district court's analysis is also very significant what they said. In the district court Pace case, the court wrote the amount of the fee never exceeded the cost to produce the stamps and the cost of services necessary to give the exporter the benefit of the exemption from taxation. Applying this two part test to the harbor maintenance tax, the supreme court held that it cannot be a user fee. First, unlike the 25 cent stamp in Pace that simply offset the government's actually incurred costs in supplying the stamp, the harbor maintenance tax varied with the quantity or value of the export. So that was disqualifying. Second, that calculus didn't correlate reliably with the exporter's actual use of any maintenance services. As the supreme court wrote in USU, congress could have structured the harbor maintenance tax based on actual use factors such as the vessel size, the tonnage, the length of port time needed and the need for dredging and other harbor maintenance services. So that same analysis and that same result applies in this case. First, section 4611B varies with the quantity or value of the export. It's multiplied by a set rate, multiplied by the number of barrels. But the quantity of the export influences the value of the export, doesn't it? I mean more oil, more value. Yes, and that's the point that I was going to make is that here you have the higher the quantity, the higher the tax, the higher the quantity, the higher the value, the higher the tax. This tax increases with quantity and value. In the analysis from USU- Well, but what I'm getting at, I'm right there with you, but what I'm getting at is the more oil, then the more value. I mean it's tied to more oil, more value, but if there's a spill, the more oil, then the more damage from a spill, right? If there's a spill, the more damage, possibly, but the question here is not the more spill, the more damage. The question here is, is the exporter liable for this tax? Are they given a benefit or a service in exchange? I thought your argument was that this correlation between this tax and quantity was unfair. All that I'm saying right now, Judge, is the way the US Supreme Court described the PACE analysis is that there's a two-part test. If the amount of the tax, if the tax bill varies depending upon quantity or value, it does not have the characteristics of a user fee. That's precisely the case with Section 4611B in our case. The greater the quantity, the higher the tax, but importantly, that greater amount of tax doesn't correlate reliably with any government service provided to the exporter in exchange for the tax. Taxes- To the extent there's cleanup, wouldn't there be more work to clean up a bigger spill than a smaller spill? That's not the issue, Judge. There might be more work, but the question is, is there a benefit or service provided to the taxpaying exporter? And your question actually leads into my very next point. The money that is paid under Section 4611B is used to fund the Oil Spill Liability Trust Fund. Under the Oil Pollution Act of 1990, if a responsible party, again, not defined as an exporter, responsible party is the owner or operator or demise charter of the vessel who causes the spill. If a responsible party causes a spill that damages a third party and does not compensate that third party for the damage, the third party can make a claim against the fund. Additionally, if a responsible party causes damage over and above its capped liability and then pays for that additional damage, that responsible party stands to possibly get reimbursed out of the fund. So the beneficiaries of the fund that the exporter is required to build are the people who can make a claim against the fund. You've got the responsible parties. You've got the damaged claimants. So Section 4611B – Is your point that – is this your point? That by varying the amount you have to pay based on the amount of oil being exported, that may very well be rational policy, but it makes it a tax rather than a fee? Is that sort of the idea? That's exactly right, Judge. It makes it a tax. And is that because via fee it's got to be – rather than varying on how much oil is being exported, it's got to be based on the value of the government service garnered by the exporter? It's got to be linked to or correlate with the benefit or service provided to the exporter, and there simply isn't one in this case. So what is – how would you evaluate the benefit to the exporter? Are you saying there's no benefits to the exporter, or are you saying that there is a benefit to the exporter, it just doesn't correlate to the amount being exported? The government's argument – and it's a new argument on appeal – is that there is in some way, shape or form some amorphous benefit to the exporter only in as much as the government supplying cleanup costs benefits, in their view, the entire oil industry of which the exporter is a part. That's the closest that they've ever come to articulating any direct benefit to the exporter. My position is that we are required to build the fund. The fund is used for the benefit and for purposes other than benefiting the exporter. So my position is I can't see the direct benefit to the exporter. Their argument is because the exporter is in the oil industry and it benefits the oil industry, they get a benefit in some way, shape or form. I guess to use an analogy, everybody who pays into Social Security theoretically gets benefit from Social Security. But I take it your view is we still call that a tax rather than a fee because what you get back may or may not correlate to what you put in.  So is your point that you get nothing back or just that the benefit you get back is just not very related to the amount you put in? I don't see anything under the Oil Pollution Act of 1990, nor do I see anything in their brief where I can identify a direct service or benefit provided to the exporter. In fact, their arguments are sort of – the way they've articulated it is it's more punitive to the exporter simply because they're in the oil industry and they're sending oil in some instances into navigable waters and that therefore they should pay. But they're not identifying any direct benefit for the payment. Will your client benefit from the cap on liability or not at all? No. As I said at the beginning, the cap on liability is available for responsible parties. Responsible parties is a defined term, defined class, owners, operators or demise charters. Exporters are not in that definition. Exporters do not have cap liability. So that was their argument. So the idea then basically, you're an exporter. If there's a spill of that oil that you're exporting, your client's exporting, it may not be your client's fault at all, in which case they wouldn't be held liable and therefore they wouldn't be advantaged by the cap. Is that the idea? That is the idea. In fact, under the fee for a service concept, let's say hypothetically that we exported some oil and we paid the tax on it. Let's say hypothetically we still had title to the oil as it was out at sea, which may or may not be the case, depending on whatever the circumstances are. You would think that if Trafigura or any exporter who pays into the fund, you would think that they would have an insurance claim for the loss of value that they lost by virtue of the responsible party having caused the spill. But we don't even have that benefit. So that's what I'm saying, Judge. There's not a benefit that flows to the exporter in exchange for the tax, and certainly not that correlates in any way with a government service that they provide. So I just want to be clear. So your first response is the exporters get no benefit. There is no benefit to the exporter. Because Judge Ho has asked that same question several times, and I know you're answering it, but I'm trying to maybe oversimplify. Your response is no, there is no benefit that flows from this tax being paid by the exporter. They get nothing from it. That's my position. All right. But to the extent there is a benefit, it would be whatever the government is trying to argue, that just because that the oil spill cleanup somehow benefits the oil industry as a whole. And I just argue that if that is a benefit, that's not enough under U.S. SHU. That doesn't get them there. I submit that their claim that oil spill cleanup costs that benefit the oil industry as a whole, they're arguing that that is enough of a benefit, and I submit that that argument fails for at least three reasons. First, the service must be rendered to the exporter who pays the charge. In describing why the $0.25 stamp charge in PACE was a user fee, the court in U.S. SHU explained that it was compensation given for a service in fact rendered that was not excessive, taking into the cost of arrangements needed to give the exporter the benefit of the exemption. So the analysis is do you take money in exchange, do you provide the pay? What was the benefit given to the exporter in that case? In the PACE case, the benefit that was given to the exporter was that there was a more onerous tobacco tax that varied depending upon quantity or value, and it was a fairly high-level tax. In order to allow the exporter to exempt itself, to exempt its exports automatically from that tax, they simply had to pay $0.25 for a stamp that identified those exports. That was a valuable service provided to the exporter. And that's exactly what the district court case, that blurb that I wrote from the district court in PACE, that's what they said is not only did it benefit the exporter, the amount of the charge simply offset the government's cost. This charge was not used to build any sort of super fund or anything like that. It simply offset the cost in providing the benefit to the exporter. Without that stamp, the exporter would have had to pay a tax? Say again, Judge? Without that stamp, the exporter would have had to pay a tax. Is that what you're saying? Without that stamp, there would have been confusion as to whether or not those packages are subject to the tax. And this eliminated the confusion to make a very clean system that benefited the tobacco exporter. And that's clear from the USU's opinion description of its earlier decision in PACE and that district court blurb that I read. It's very clear. Now, the benefit was an elimination of confusion. And to allow the exporter to exempt itself from the domestic tax. My question is, without the stamp, I guess, and without some determination about whether or not the exporter would be exempt, the exporter would have had to pay a tax? I say that there would be confusion about which crates are subject to the tax or not. And this automatically eliminated the confusion to the benefit of the exporter. So here's what I want to do. Let me ask you one. Yes, Judge. If we conclude that the correlation between the value of the oil and the fee charged is insufficient for you to prevail, can you still win? I'm sorry. Can you ask that one more time? All right. If we conclude that the correlation between the value of the oil and the fee charged is insufficient for you to prevail, is there another way or can you still win? If the correlation between the value and the fee charged is insufficient, I mean, that's the problem with this case. There has to be a high correlation between the fee charged and the service or benefit given to Trafigura. And there isn't any correlation in this case. And on this point, and also on – I think Judge Wiener is asking, is there a second test that the government has to also pass? Does it vary depending on – okay. If it varies depending upon quantity or value, it's not a user fee. It also has to correlate. The amounts have to correlate with the benefit given to us. And here there's no correlation between the amounts paid and the benefit given. Well, I guess what I'm thinking here is there's the issue of whether there's a connection between what you're paying and what you're getting. But there might also be a second issue, which is are you paying what it costs the government? Because what I heard about the stamp tax is you're basically just paying for the cost of the stamp. Is that right? That's exactly right. It's a complete offset. And that's a big disconnect in their case. In other words, you're really just – you're just holding the government harmless. The government is not going to tax the exported tobacco because it's not allowed to. But the government is going to say, look, just help us administer the system, help us pay for the paperwork essentially. Right. That's exactly right. And what I would say on this point is that the Harbor Maintenance Tax in the U.S. SHU case, they want to focus on the notion that a risk pool is enough to make it a user fee. The Harbor Maintenance Tax in the U.S. SHU case was essentially a risk pool, a built-up fund for maintenance services. But that does not have the characteristics of a user fee. And that was the same exact situation with respect to the coal tax at issue in the Ranger Fuel case. That was a shared risk system, as the government argues, that pooling risks and resources to build a fund is a user fee. Well, it's not a user fee. Under U.S. SHU and under the Ranger Fuel case where the district court struck down the coal excise tax, that operated in the same manner. It built a fund for the benefit of people that may benefit in some way in the industry. So for all of the – I see that my time is up. If there's no more questions, I will ask the court for all of these reasons and the additional reasons in our brief to affirm the judgment in favor of Trafigura. Thank you, Counsel. Thank you, Judge. The bottom. I think I just have a couple points I want to make. First, the exporters benefit both from the government's – the Coast Guard's oil spill risk management services as well as from the liability cap. In the district court, the government focused on the liability cap because it was disputed between the parties whether Trafigura could ever qualify as a responsible party or not. The district court didn't resolve that issue, and the government doesn't need that issue to be resolved. But we will point out that exporters benefit from the liability cap if they receive a direct benefit if the exporter is a responsible party, and the exporter can be a responsible party. You know, the Exxon Valdez, Exxon owned both the – What's your response to my Social Security hypo? Would you describe that as a tax or a user fee? Well, it's called a tax in the code. I've actually never thought of it as a user fee because the government's not really providing services there. I don't know. I haven't seen how that's analyzed. No, no, no. Sure it is. No, no. Social Security is designed kind of like an IRA. It's obviously not exactly like an IRA, but the idea is you pay in, and the expectation is that the government will take care of you during your retirement years or if you're disabled. And yet we describe that as a tax, not a fee. Yeah, I just don't know. I'd have to think about that. I think if you're looking for an example, one tax that's in the code that's been understood by the common – some of the secondary sources we cite as a user fee are the taxes that fund the highway trust fund. So like the tax on gasoline or on heavy vehicles, it's called a tax, but it's understood to be a user fee because it offsets the government's costs providing the services of highways, which allows gasoline and heavy vehicles to be of practical use. Exporters do also benefit more broadly from the oil spill-related services the government provide because they benefit from transporting oil, and that creates the risk in a similar way that the risk was created in PACE when a manufacturer wanted to claim a tax exemption and that required the government to provide the services of making sure that there wasn't going to be any tax fraud. There is no per se rule. We touched on this in the beginning, and it's in our brief, but just to respond, there is no per se rule against a quantity-based or value-based charge as long as there is a reliable correlation, and the correlation does not have to be – it's not a high correlation, as counsel for traffickers said. As the Supreme Court described it in U.S.U., it just needs to be a reliable correlation, and there is a reliable correlation. Is the district court correct that millions of dollars are taken from this fund for other activities? It's not just for compensation for oil spills. Well, I mean, other activities, they're all oil spill-related activities. We haven't challenged the district court's determination of the dollar amount that may be spent on research and development of oil cleanup costs, but in our view, those all relate to the risk that the government manages for the industry that creates the risk in the first place by exporting or importing oil. Congress determined that exporters should pay a part of this industry-wide risk-pulling fund, and Congress's funding decision does not, in our view, violate the export clause because it operates to compensate the government for these oil spill-related activities and for no other purpose, and it's not designed to raise general revenue. And therefore, we ask this court to reverse the judgment of the district court and direct the court to enter a judgment of the United States. If you have any other questions, otherwise the government rests on its brief. All right. Thank you. Thank you very much. All right. This concludes.